[No. 37015-8-II. Division Two. February 24, 2009.]

*In the Matter of* THE 1934 DEED TO CAMP KILWORTH ET AL.

83

*Robert G. Casey* and *Jennifer A. Wing* (of *Eisenhower & Carlson, PLLC*), for appellant.

*Patricia A. Richardson, City Attorney for the City of Federal Way*; *G. Perrin Walker, Neal H. Luna*, and *Scott D. Winship* (of *Vandeberg Johnson & Gandara*); and *Robert M. McKenna, Attorney General*, and *Jeffrey T. Even, Deputy Solicitor General*, for respondents.

¶1 HOUGHTON, J. — In a 1934 deed, William and Augusta Kilworth conveyed land to the Boy Scouts of America. The deed provided that the land would revert to the Kilworths or their heirs if the Boy Scouts sold the property or stopped using it as a scouting camp. The Boy Scouts sought to have the reversionary clause removed from the deed through the court's equity jurisdiction, enabling them to sell Camp Kilworth for funds to further benefit the Boy Scouts. The trial court, determining that this was a matter of trust administration, used its equitable powers to grant the Boy Scouts' request. Holding that the grantors' reversionary clause prohibits reformation of the deed, we reverse.

## FACTS

¶2 The Boy Scouts used Camp Kilworth, located in Federal Way, for more than 70 years. The Kilworths granted the land to the Boy Scouts "for the purpose of teaching scout craft, cooperation, patriotism, courage, self reliance and kindred virtues among boys." Clerk's Papers (CP) at 19 (emphasis omitted). The Pacific Harbors Council, Boy Scouts of America (Scout Council) administers the camp.

¶3 The deed included "express conditions that [the Boy Scouts] shall never convey, lease or encumber said premises . . . and shall never allow the same to come into the possession of any other party." CP at 19. Violation of this condition would activate a reversionary clause, stripping the Scout Council of any property interest. The Florence B. Kilworth Trust and the William W. Kilworth Trust (Kilworth heirs) are successors-in-interest to the reversionary right.

¶4 In early 2006, the Scout Council sued to remove the reversionary clause in the deed. The Scout Council sought

authority to sell Camp Kilworth in order to fund improvements to other existing camps that promoted scouting. The Scout Council noted significant changes in the circumstances of Camp Kilworth such as the urbanization of the area and the deterioration of the land due to erosion.

¶5 At trial, the Kilworth heirs argued that the grantors' clear donative intent prohibited the trial court from exercising its equitable powers. Therefore, they asserted that the trial court had no power to reform the deed by removing the reversionary clause.

¶6 The Scout Council argued that, rather than a mere grant of land, the Kilworth deed constituted a trust. The Scout Council claimed that the trial court sitting in equity could reform the document under the equitable deviation doctrine[1] and *Niemann v. Vaughn Community Church*, 154 Wn.2d 365, 113 P.3d 463 (2005).

¶7 The trial court ruled in favor of the Scout Council and removed the reversionary clause from the deed.[2] The Kilworth heirs appeal.

## ANALYSIS

¶8 The Kilworth heirs contend that the trial court erred by reforming the deed because it unambiguously gave the Boy Scouts land but with conditions. They argue the deed did not create a trust.[3] They further assert that the trial

---

[1] Equitable deviation provides that a "court will direct or permit the trustee of a charitable trust to deviate from a term of the trust if it appears to the court that compliance is impossible or illegal, or that owing to circumstances not known to the settlor and not anticipated by him[,] compliance would defeat or substantially impair the accomplishment of the purposes of the trust." RESTATEMENT (SECOND) OF TRUSTS § 381 (1959).

[2] Neither party argues a defective or invalid reversionary clause. On appeal, however, the Scout Council argues that if the deed did not constitute a trust, we should declare the reversionary clause an unreasonable restraint on alienation. As the Scout Council failed to raise this issue below, we could decline to address it under RAP 2.5(a); nevertheless, the argument lacks merit.

[3] As a preliminary matter, the Kilworth heirs argue that we should not consider the Scout Council's theory that the 1934 deed constituted a trust because it failed

court never found a trust nor would the evidence support such a finding.

■ ■ ¶9 We review a document's purported ambiguity de novo as a question of law. *McGary v. Westlake Investors*, 99 Wn.2d 280, 285, 661 P.2d 971 (1983). We will not read ambiguities into an instrument. *McGary*, 99 Wn.2d at 285.

■ ■ ¶10 In general, a trust relationship is created where one party grants, with intent, property to a second party, the trustee, for the benefit of a third party. RESTATEMENT (SECOND) OF TRUSTS § 2 (1959). "A charitable trust is a fiduciary relationship with respect to property arising as a result of a manifestation of an intention to create it, and subjecting the person by whom the property is held to equitable duties to deal with the property for a charitable purpose." RESTATEMENT, *supra*, § 348. The Scout Council claims that the conveyance here fits this definition. We disagree.

■ ¶11 We begin with the basic premise that granting a gift does not establish a trust relationship if there was no intention to do so. *See* F.W. MAITLAND, EQUITY: A COURSE OF LECTURES 71 (1969); *Walberg v. Mattson*, 38 Wn.2d 808, 813, 232 P.2d 827 (1951). The 1934 deed obligates the Scout Council, as grantee, to "use, keep and maintain said premises for the purpose of teaching scout craft." CP at 19. It provides that should the Scout Council "abandon said premises, or violate any of the provisions above specified," Camp Kilworth "shall revert to and vest in the Grantors, their heirs . . . as though this conveyance had never been made." CP at 19. As the *Restatement, supra*, § 11 provides, "An interest subject to a condition subsequent is not, because of the condition, held in trust." Here, the deed clearly and unambiguously granted the property to the Boy Scouts, provided it followed certain conditions. If the Boy

---

to raise this issue before the trial court. RAP 2.5(a). We disagree, as the Scout Council did argue the theory below.

Scouts failed to follow the conditions, the land reverted to the grantors' heirs. The deed did not create a trust.[4]

¶12 Both the Scout Council and the trial court relied on *Niemann* to reform the deed.[5] The facts in *Niemann* differ significantly from those here and do not provide a basis for the trial court's decision.

¶13 In *Niemann*, the instrument creating a charitable trust contained an alienation restriction, but not a reversionary clause. 154 Wn.2d at 370-71. It placed an affirmative duty on church trustees to continue maintaining the specified property for the church's benefit. *Niemann*, 154 Wn.2d at 370-71. Unlike this case, the parties in *Niemann* did not dispute the charitable trust on appeal; instead, they disputed the intent of the grantors in deeding the property. 154 Wn.2d at 375. Our Supreme Court held "that deviation is permissible when, due to circumstances unanticipated by the settlor, modification of an administrative requirement would advance the trust's purpose." *Niemann*, 154 Wn.2d at 386.

¶14 The Scout Council raises an alternate argument to support the trial court's decision to reform the deed. It argues that chapter 11.96A RCW grants the trial court authority to act as it did here. RCW 11.96A.020(1)(a) reads: "It is the intent of the legislature that the courts shall have full and ample power and authority under this title to administer and settle . . . [a]ll matters concerning the estates and assets of . . . deceased persons . . . in accordance with this title." With named exceptions not pertinent here, RCW 11.96A.030(1)(c) defines "matter" as "any issue, question, or dispute . . . arising in the administration of an estate or trust," including "[t]he construction of wills, trusts, . . . and other writings." We are not faced with a

---

[4] We agree with the Kilworth heirs that the trial court never found that a trust was created. Nor, if it had, would substantial evidence support such a finding. The 1934 deed unambiguously granted the property to the Boy Scouts with specified conditions.

[5] We recognize that the trial court sought to achieve a laudable goal of assuring the promotion of scouting.

matter of administration of an estate but rather the interpretation of a written deed conveyed during the grantors' lifetime. The Scout Council's argument fails.

¶15 Here, the deed is plain on its face. The donor expressed no intent to create a trust.[6] The deed should not have been reformed following equitable principles.[7]

¶16 Reversed.[8]

ARMSTRONG and HUNT, JJ., concur.

Review denied at 166 Wn.2d 1021 (2009).

---

[6] The Scout Council argues that one Kilworth descendent approves of selling the land. This information does not provide legal support for reforming the deed.

[7] The Scout Council also cannot rely on principles of equitable reformation. Only the donor, and not the donee, may seek equitable reformation. HENRY L. McCLINTOCK, HANDBOOK ON THE PRINCIPLES OF EQUITY §101 (2d ed. 1948).

[8] Because we reverse, we do not address the Kilworth heirs' other arguments.